## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | |
|---|---|
| **ROBERTA LINDENBAUM**, individually and on behalf of all others similarly situated,<br><br>*Plaintiff*,<br><br>*v.*<br><br>**TOMORROW ENERGY CORP**, a Nevada corporation, and **JOHN DOE CORPORATION**,<br><br>*Defendants*. | Case No. : 1:19-cv-2680<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

## <u>CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL</u>

Plaintiff Roberta Lindenbaum ("Lindenbaum" or "Plaintiff") brings this Class Action Complaint and Demand for Jury Trial ("Complaint") against Defendants, Tomorrow Energy Corp ("Tomorrow Energy") and John Doe Corporation, ("John Doe Corporation" and together with Tomorrow Energy, "Defendants") to: (1) stop their practice of placing calls using "an artificial or prerecorded voice" to the telephones of consumers nationwide without their prior express written consent; and (2) obtain redress for all persons injured by their conduct. Plaintiff Lindenbaum, for her Complaint, alleges as follows upon personal knowledge as to herself and her own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by her attorneys.

## PARTIES

1.      Plaintiff Roberta Lindenbaum is a natural person and resident of Cuyahoga County, Ohio.

2.      Defendant Tomorrow Energy is a corporation organized and existing under the laws of the State of Nevada.[1] Tomorrow Energy systemically and continuously conducts business throughout this District, the State of Ohio, and the United States. Tomorrow Energy is registered to do business in Ohio with the Secretary of State and the Public Utility Commission. Tomorrow Energy can be served through its registered agent, Corporation Service Company, located at 50 West Broad Street, Suite 1330, Columbus Ohio 43215.

3.      John Doe Corporation is a vendor of Tomorrow Energy that did not identify itself. The true identity of John Doe Corporation will be revealed during discovery and Plaintiff will amend, or seek leave to amend, the Complaint at that time.

## JURISDICTION AND VENUE

4.      This Court has jurisdiction over the subject matter of this action under 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* (the "TCPA"), which is a federal statute.

5.      This Court has personal jurisdiction over Defendants because Defendants solicit significant consumer business in this District, Tomorrow Energy has entered into contracts in this District, and a significant portion of the unlawful conduct alleged in this Complaint occurred in, and/or was directed, to this District. Specifically, Plaintiff received the prerecorded call at issue on her cellular telephone, in this District.

6.      Venue is proper in this District under 28 U.S.C. § 1391(b) because Tomorrow Energy conducts a significant amount of business within this District and

---

[1] On, or about November 26, 2018, Tomorrow Energy changed its name from Sperian Energy Corp.

because the wrongful conduct giving rise to this case occurred in, and/or was directed to, this District. Venue is additionally proper because Plaintiff resides in this District.

## COMMON ALLEGATIONS OF FACT

7.     Tomorrow Energy is a certified supplier in the Ohio Energy Choice Program, offering electricity and natural gas to consumers in Ohio.

8.     In recent years, energy suppliers such as Tomorrow Energy have turned to unsolicited telemarketing as a way to increase its customer base. Widespread telemarketing is a primary method by which Tomorrow Energy solicits new customers.

9.     John Doe Corporation initiated a prerecorded telemarketing call to the cellular telephone numbers of Plaintiff and the Class to promote Tomorrow Energy in violation of the TCPA. Tomorrow Energy hired John Doe Corporation to originate new customers and is vicariously liable for its illegal telemarketing conduct.

10.     The TCPA prohibits companies, such as Tomorrow Energy, from placing calls using an artificial or prerecorded voice ("prerecorded calls") when making calls to cellular telephones without first obtaining consent.

11.     Tomorrow Energy has violated, and continues to violate, the TCPA and its implementing regulations by placing, or having placed on its behalf, prerecorded calls to residential telephone subscribers (a) who have not expressly consented to receiving such calls and/or (b) who have expressly requested **_not_** to receive such calls.

12.     As Congress recognized:

> Many customers are outraged over the proliferation of intrusive, nuisance calls to their homes from telemarketers…. Banning such automated or prerecorded telephone calls to the home, except when the receiving party consents to receiving the call or when such calls are necessary in an emergency situation affecting the health and safety of the consumer, is the

only effective means of protecting telephone consumers from this nuisance and privacy invasion.[2]

13.     Senator Larry Pressler, one of the original drafters of the TCPA, explained the need for the TCPA by observing that "[u]nlike other communications media, the telephone commands our instan[t] attention. Junk mail can be thrown away. Television commercials can be turned off. The telephone demands to be answered." 137 Cong. Rec. S18785 (daily ed. Nov. 27, 1991) (statement of Sen. Pressler).

14.     As explained by the Federal Communications Commission ("FCC")[3], the TCPA requires "*prior express written consent* for all autodialed or prerecorded telemarketing calls to wireless numbers and residential lines." *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* CG No. 02-278, FCC 12-21, 27 FCC Rcd. 1830 ¶ 2 (Feb. 15, 2012).

15.     Yet, in violation of this rule, Defendants fail to obtain any prior express written consent to place prerecorded calls to consumers' cellular telephone numbers.

16.     Consumer complaints about Tomorrow Energy's invasive and repetitive calls are legion. As a sample, consumers have complained as follows:

- Called 17 times since 1/6/15. They REFUSE to remove me from their list and keep calling.[4]
- Has called cell phone 3 days in a row. I do not give out my cell #. Don't know how they got it. Went to voice mail, but no message was left.[5]
- Called and said they represented West Penn Power, and went into a long tirade about how he could save me money on my utility bill. I told him not to call anymore and that I was on the National Do Not Call Registry. Annoying People.[6]

---

[2] Pub. L. No. 102-243 § 2(6, 12) (1991), codified at 47 U.S.C. § 227.
[3] The FCC is the federal agency given the administrative authority to interpret and enforce the TCPA. 47 U.S.C. § 227(b)(2).
[4] https://800notes.com/Phone.aspx/1-857-232-5976/2
[5] https://800notes.com/Phone.aspx/1-215-666-7312
[6] https://800notes.com/Phone.aspx/1-267-404-6602

- Multiple calls from different numbers - they are all coming from the same telemarketer: "Sperian Energy".[7]
- For the past week this number has been calling our home number (land line). I don't answer as we've received so many other calls over the past several months. I checked the Do Not Call list and they have me as registered since 2003.[8]

17.     In response to the liability risk associated with the TCPA, numerous commercially available services exist to help companies that call others using prerecorded voices, such as Defendants, to identify cellular subscribers and otherwise ensure that calls are only made to consenting consumers. For instance, companies such as Infutor, Nextmark List, and Contact Center Compliance advertise their ability to instantly identify and flag disconnected telephone numbers from cellular telephone number data lists on a recurring basis (such as weekly or monthly). This type of service can identify disconnected numbers before they are recycled, thereby alerting mobile marketers that any consent associated with those telephone numbers has been terminated.

18.     Despite the FCC's ruling, the industry guidelines, and the commercial availability of programs that help callers filter out non-consenting numbers, Defendants fail to take the necessary steps to ensure that their prerecorded calls are placed only to consenting recipients.

19.     Rather, in an effort to increase revenue and skirt additional costs, Defendants simply ignore the law when contacting individuals via prerecorded calls to their residential telephones.

---

[7] https://800notes.com/Phone.aspx/1-412-714-6954
[8] https://800notes.com/Phone.aspx/1-267-606-1175

20.     Indeed, Tomorrow Energy has been sued at least four times for alleged TCPA violations[9] and last year entered into a $2.65 million settlement and consent decree with the Illinois Commerce Commission and the Illinois Attorney General regarding allegedly misleading and deceptive telemarketing practices.[10] The Illinois agreement banned Tomorrow Energy from marketing to Illinois consumers for two years, beyond the several year suspension that Tomorrow Energy had already entered into.[11]

21.     Over the last several years, Tomorrow Energy has consistently been one of the most complained about residential consumer electric generation suppliers in Pennsylvania as well.[12]

22.     Defendants know or should know that their prerecorded calls are placed to non-consenting residential telephone subscribers. Ultimately, Defendants are responsible for verifying telephone number ownership and obtaining consent before placing prerecorded calls to residential telephone subscribers.

23.     Defendants were, and are, aware that their unsolicited prerecorded calls were, and are, unauthorized as they fail to obtain prior express written consent before

---

[9] *See e.g. Rogers v Tomorrow Energy Corp. et ano*, (N.D. Ohio filed July 12, 2019); *Perrong v. Sperian Energy Corp.*, Case No. 2:19-cv-00115 (D. Nev. filed Jan 21, 2019); *Abramson v. Sperian Energy Corp*, Case No. 2:16-cv-02962 (D. Nev. filed Dec. 21, 2016); *Petrasko v. Sperian Energy Corp*, Case No. 1:15-cv-04587 (N.D. Ill. filed May 26, 2015).

[10] *See Illinois Commerce Commission v. Sperian Energy Corp.,* ICC Docket No. 15-0438 (Order affirming settlement, docketed Oct. 25, 2018); *People of the State of Illinois, ex rel Lisa Madigan v. Sperian Energy Corp.*, Case. No. 2017L8604 (Cook Cty. Cir. Ct. Settlement Agreement filed Oct. 15, 2018)

[11] *See* http://www.illinoisattorneygeneral.gov/pressroom/2018_10/20181015.html

[12] *See* Pennsylvania Public Utility Commission's *Utility Consumer Activities Report and Evaluation* for 2017,2016, and 2015, available at
http://www.puc.state.pa.us/General/publications_reports/pdf/UCARE_2017.pdf,
http://www.puc.pa.gov/General/publications_reports/pdf/UCARE_2016.pdf, and
http://www.puc.pa.gov/General/publications_reports/pdf/UCARE_2015.pdf

placing those calls to consumers. Ultimately, consumers are forced to bear the costs of receiving these unsolicited prerecorded calls.

24.     By placing the unsolicited prerecorded calls at issue in this Complaint, Defendants caused Plaintiff and the other members of the Class actual harm and cognizable legal injury. This includes the aggravation, nuisance, and invasions of privacy that result from the sending and receipt of such prerecorded calls, a loss of value realized for the monies consumers paid to their carriers for the receipt of such prerecorded calls, and a loss of the use and enjoyment of their phones, including wear and tear to the related data, memory, software, hardware, and battery components, among other harms.

25.     In response to Defendants' unlawful conduct, Plaintiff filed this action seeking (a) an injunction requiring Defendants to cease all unsolicited prerecorded calling activities and, (b) an award of actual or statutory damages to the members of the Class under the TCPA, together with costs and reasonable attorneys' fees.

**FACTS SPECIFIC TO PLAINTIFF ROBERTA LINDENBAUM**

26.     Plaintiff Lindenbaum is the registered account owner and regular user of a cellular telephone number 216-xxx-2902.

27.     On October 21, 2019 at 5:42 pm, Plaintiff received an unsolicited, pre-recorded phone call on her cellular telephone from, or on behalf of Defendants.

28.     The October 21, 2019 call used a pre-recorded voice and stated that John Doe Corporation was calling to offer Plaintiff discounted electricity.

29.     Plaintiff pressed "1" to speak with a live person and was connected with one of John Doe Corporation's telephone representatives.

30.    John Doe Corporation's phone representative asked Plaintiff for her electricity billing account number and asked if Plaintiff received any government assistance with her electric bill and confirmed that Defendant Tomorrow Energy would be the supplier.

31.    Within twenty-four hours of receiving the October 21, 2019 call, Plaintiff, through undersigned counsel, reached out to Tomorrow Energy's prior outside counsel and informed them of the call.

32.    On October 24, 2019 at 11:45 am, Plaintiff received another unsolicited, pre-recorded phone call on her cellular telephone from, or on behalf of Defendants.

33.    The October 24, 2019 call used a pre-recorded voice and stated that John Doe Corporation was calling to offer Plaintiff discounted electricity.

34.    Plaintiff pressed "1" to speak with a live person and was connected with one of John Doe Corporation's telephone representatives.

35.    John Doe Corporation's phone representative asked Plaintiff for her electricity billing account number and asked if Plaintiff received any government assistance with her electric bill and confirmed that Defendant Tomorrow Energy would be the supplier.

36.    Within several hours of receiving the October 24, 2019 call, Plaintiff, through undersigned counsel, reached out to Tomorrow Energy's prior outside counsel again, and informed them of the call and asked for confirmation that Plaintiff's cellular telephone number had been added to any internal do not call lists that Tomorrow Energy maintains or makes available to its third party telemarketers.

37.     On October 30, 2019 at 12:20 pm, Plaintiff received yet another unsolicited, pre-recorded phone call on her cellular telephone from, or on behalf of Defendants.

38.     The October 30, 2019 call used a pre-recorded voice and stated that John Doe Corporation was calling to offer Plaintiff discounted electricity.

39.     Plaintiff pressed "1" to speak with a live person and was connected with one of John Doe Corporation's telephone representatives.

40.     John Doe Corporation's phone representative asked Plaintiff for her electricity billing account number and asked if Plaintiff received any government assistance with her electric bill and confirmed that Defendant Tomorrow Energy would be the supplier.

41.     Within several hours of receiving the October 30, 2019 call, Plaintiff, through undersigned counsel, again reached out to Tomorrow Energy's prior outside counsel and informed them of the call and again asked for confirmation that Plaintiff's cellular telephone number had been added to any internal do not call lists that Tomorrow Energy maintains or makes available to its third party telemarketers.

42.     On October 31, 2019 at 4:37 pm, Plaintiff received an unsolicited, pre-recorded phone call on her cellular telephone from, or on behalf of Defendants.

43.     The October 31, 2019 call used a pre-recorded voice and stated that John Doe Corporation was calling to offer Plaintiff discounted electricity.

44.     Plaintiff pressed "1" to speak with a live person and was connected with one of John Doe Corporation's telephone representatives.

45.     John Doe Corporation's phone representative asked Plaintiff for her electricity billing account number and asked if Plaintiff received any government assistance with her electric bill and confirmed that Defendant Tomorrow Energy would be the supplier.

46.     Upon receiving the October 31, 2019 call, Plaintiff, through undersigned counsel, again reached out to Tomorrow Energy's prior outside counsel and informed them of the call and again asked for confirmation that Plaintiff's cellular telephone number had been added to any internal do not call lists that Tomorrow Energy maintains or makes available to its third party telemarketers.

47.     Plaintiff has never provided prior express written consent to Defendants to receive prerecorded calls to her on the 216-xxx-2902 number.

48.     Defendants failed to obtain prior express written consent that included, as required by 47 C.F.R. § 64.1200(f)(8)(i) a "clear and conspicuous" disclosure informing the person signing that:

> (A) By executing the agreement, such person authorizes the seller to deliver or cause to be delivered to the signatory telemarketing calls using an automatic telephone dialing system or an artificial or prerecorded voice; and
>
> (B) The person is not required to sign the agreement (directly or indirectly), or agree to enter into such an agreement as a condition of purchasing any property, goods, or services.

49.     By placing the prerecorded calls as alleged herein, Defendants have caused consumers actual harm in the form of annoyance, nuisance, and invasion of privacy. In addition, the prerecorded call disturbed Plaintiff's use and enjoyment of her phone, in addition to the wear and tear on the phone's hardware (including the phone's battery) and the consumption of memory on Plaintiff's phone.

50.     In order to redress these injuries, Plaintiff, on behalf of herself and the other members of the Class, brings suit under the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.*, which prohibits unsolicited prerecorded calls to cellular telephones.

51.     On behalf of the Class, Plaintiff seeks an injunction requiring Defendants to cease all unsolicited pre-recorded calling activities and an award of actual or statutory damages to the class members, together with costs and reasonable attorneys' fees.

### TOMORROW ENERGY'S LIABILITY FOR TELEMARKETING CALLS

52.     Tomorrow Energy is a "person," as defined by 47 U.S.C. § 153(39).

53.     The FCC is tasked with promulgating rules and orders related to enforcement of the TCPA. *See* 47 U.S.C. § 227(b)(2).

54.     The FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *See In re Rules & Regulations Implementing the TCPA*, 10 FCC Rcd. 12391, 12397 (1995).

55.     In its January 4, 2008 ruling, the FCC reiterated that a company on whose behalf a telephone call is made bears the responsibility for any violations. *In re Rules and Regulations Implementing the TCPA*, CG Docket No. 02-278, FCC 07-232, Declaratory Ruling, ¶ 10 (Jan. 4, 2008) (specifically recognizing "on behalf of" liability in the context of an autodialed or prerecorded message call sent to a consumer by a third party on another entity's behalf under 47 U.S.C. § 227(b)).

56.     On May 9, 2013, the FCC confirmed this principle in a Declaratory Ruling holding that sellers such as Tomorrow Energy may not avoid liability by outsourcing telemarketing:

11

> [A]llowing the seller to avoid potential liability by outsourcing its
> telemarketing activities to unsupervised third parties would
> leave consumers in many cases without an effective remedy for telemarketing
> intrusions. This would particularly be so if the telemarketers were
> judgment proof, unidentifiable, or located outside the United States, as is
> often the case. Even where third-party telemarketers are identifiable,
> solvent, and amenable to judgment limiting liability to the telemarketer
> that physically places the call would make enforcement in many cases
> substantially more expensive and less efficient, since consumers (or law
> enforcement agencies) would be required to sue each marketer separately
> in order to obtain effective relief. As the FTC noted, because "[s]ellers
> may have thousands of 'independent' marketers, suing one or a few of
> them is unlikely to make a substantive difference for consumer privacy."

*In re Joint Petition Filed by DISH Network*, 28 FCC Rcd. 6574, 6588 (¶ 37) (2013)
("May 2013 FCC Ruling") (internal citations omitted).

57.    More specifically, the May 2013 FCC Ruling held that, even in the

absence of evidence of a formal contractual relationship between the seller and the

telemarketer, a seller is liable for telemarketing calls if the telemarketer "has apparent (if

not actual) authority" to make the calls. *Id.* at 6586 (¶ 34).

58.    The May 2013 FCC Ruling rejected a narrow view of TCPA liability,

including the assertion that a seller's liability requires a finding of formal agency and

immediate direction and control over the third-party who placed the telemarketing call.

*Id.* at 6587 n.107.

59.    The May 2013 FCC Ruling further clarifies the circumstances under

which a telemarketer has apparent authority:

> [A]pparent authority may be supported by evidence that the seller allows
> the outside sales entity access to information and systems that normally
> would be within the seller's exclusive control, including: access to
> detailed information regarding the nature and pricing of the seller's
> products and services or to the seller's customer information. The ability
> by the outside sales entity to enter consumer information into the seller's
> sales or customer systems, as well as the authority to use the seller's trade
> name, trademark and service mark may also be relevant. It may also be
> persuasive that the seller approved, wrote or reviewed the outside entity's

12

telemarketing scripts. Finally, a seller would be responsible under the TCPA for the unauthorized conduct of a third-party telemarketer that is otherwise authorized to market on the seller's behalf if the seller knew (or reasonably should have known) that the telemarketer was violating the TCPA on the seller's behalf and the seller failed to take effective steps within its power to force the telemarketer to cease that conduct.

*Id.* at 6592 (¶ 46)

60.     Tomorrow Energy is legally responsible for ensuring that the company that made the calls complied with the TCPA, even if Tomorrow Energy did not itself make the calls.

61.     Tomorrow Energy knowingly and actively accepted business that originated through the illegal telemarketing calls from the company that made the calls.

62.     In fact, Tomorrow Energy accepted the business from illegal calls from the John Doe Corporation Defendant, even though it had previously received complaints alleging that the third parties working on its behalf were violating the TCPA.

63.     Despite these facts, Tomorrow Energy has continued to fail to monitor the third parties operating on its behalf.

64.     By hiring a company to make calls on its behalf, Tomorrow Energy "manifest[ed] assent to another person … that the agent shall act on the principal's behalf and subject to the principal's control" as described in the Restatement (Third) of Agency.

65.     Moreover, Tomorrow Energy maintained interim control over the actions of the party that made the calls.

66.     For example, Tomorrow Energy had absolute control over whether, and under what circumstances, it would accept a customer.

67.     Furthermore, Tomorrow Energy had day-to-day control over the actions of the calling party, including the ability to prohibit it from using a pre-recorded message to contact potential customers of Tomorrow Energy.

68.     Additionally, Tomorrow Energy restricted the geographic location of the calls made by the company promoting Tomorrow Energy.

69.     Tomorrow Energy also gave interim instructions to the company that made the calls by providing the volume of calling and contracts it would purchase.

70.     Moreover, Tomorrow Energy instructed the calling party to transfer potential customers over to a third-party verification company that Tomorrow Energy had hired to complete the sign-up process.

71.     In other words, Tomorrow Energy allows its vendors to bind Tomorrow Energy in contract following an illegal telemarketing call, such as the one Plaintiff received.

72.     Finally, the May 2013 FCC Ruling states that called parties may obtain "evidence of these kinds of relationships … through discovery, if they are not independently privy to such information." *Id.* at 6592-593 (¶ 46). Moreover, evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id.* at 6593 (¶ 46).

## CLASS ALLEGATIONS

73.     Plaintiff brings this action pursuant to Federal Rules of Civil Procedure

23(b)(2) and 23(b)(3) on behalf of herself and all others similarly situated and seeks

certification of the following Class:

> **<u>Robocall No Consent Class</u>:** All persons in the United States who from a
> date four years prior to the filing of the initial complaint to the present: (1)
> Defendants (or a third person acting on behalf of Defendants) called; (2)
> on the person's cellular telephone number using an artificial or
> prerecorded voice; and (3) for whom Defendants lacked prior express
> consent to call that cellular telephone number at the time the call was
> made.

74.     The following people are excluded from the Class: (1) any Judge or

Magistrate presiding over this action and members of their families; (2) Defendants,

Defendants' subsidiaries, parents, successors, predecessors, and any entity in which the

Defendants or their parents have a controlling interest, and its current or former

employees, officers and directors; (3) persons who properly execute and file a timely

request for exclusion from the Class; (4) persons whose claims in this matter have been

finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and

Defendants' counsel; and (6) the legal representatives, successors, and assigns

of any such excluded persons. Plaintiff anticipates the need to amend the definition of the

Class following class discovery, including discovery revealing the manner by which

Defendants claim they obtained prior express consent to place autodialed and/or pre-

recorded calls to the Plaintiff.

75.     **Numerosity**: The exact number of members within the Class is unknown

and not available to Plaintiff at this time, but it is clear that individual joinder is

impracticable. On information and belief, Defendants have placed unsolicited calls to

hundreds or thousands of consumers who fall into the definition of the Class. Members of the Class can be identified through Defendants' records.

76.     **Typicality**: Plaintiff's claims are typical of the claims of other members of the Class in that Plaintiff and the members of the Class sustained damages arising out of Defendants' uniform wrongful conduct, namely their unauthorized telemarketing calls. Plaintiff is a member of the Class defined herein, and if Plaintiff is able to recover for the claims set forth in this Complaint, then the other members of the Class will have a right to recover as well.

77.     **Adequate Representation**: Plaintiff will fairly and adequately represent and protect the interests of the Class and has retained counsel competent and experienced in complex class actions, including class actions under the TCPA and related statutes. Plaintiff has no conflicts with, or interests antagonistic to, those of the Class, and Defendants have no defenses unique to Plaintiff.

78.     **Commonality and Predominance**: There are many questions of law and fact common to the claims of Plaintiff and the Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include, but are not necessarily limited to the following:

a)  Whether Tomorrow Energy is liable for the conduct of their third-party vendor;

b)  Whether John Doe Corporation made calls with a prerecorded message;

c)  Whether Defendants' conduct constitutes a violation of the TCPA;

d)  Whether Defendants utilized an artificial or prerecorded voice to place calls to members of the Class;

16

e) Whether members of the Class are entitled to statutory and treble damages based on the willfulness of Defendants' conduct;

f) Whether Defendants obtained prior express consent to contact any class members;

g) Whether Defendants' calls constitute telemarketing or were dual purpose messages; and

h) To the extent Defendants' conduct does not constitute telemarketing, whether Defendants obtained prior express oral consent to contact any class members.

79. **Superiority:** This case is also appropriate for class certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy. Joinder of all parties is impracticable, and the damages suffered by the individual members of the Class will likely be relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by Defendants' actions. Thus, it would be virtually impossible for the individual members of the Class to obtain effective relief from Defendants' misconduct. Even if members of the Class could sustain such individual litigation, it would still not be preferable to a class action. Individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single Court. Economies of time, effort and expense will be fostered and uniformity of decisions ensured.

80. Adequate notice can be given to the members of the Class directly using information maintained in Defendants' records or through notice by publication.

**FIRST CAUSE OF ACTION**
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff and the Robocall No Consent Class)**

81.     Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

82.     Defendants and/or their agents placed unsolicited calls to residential telephone numbers belonging to Plaintiff and the other members of the Robocall No Consent Class.

83.     These calls were made without the prior express written consent of the Plaintiff and the other members of the Robocall No Consent Class to receive such calls.

84.     These calls, including those to Plaintiff, utilized an artificial or prerecorded voice.

85.     To the extent prior written express consent was required, Defendants failed to obtain prior written express consent that disclosed to the consumer that agreeing to receive pre-recorded calls was not a condition of purchase or use of any goods or service. Neither was oral consent provided.

86.     To the extent Tomorrow Energy's agent, John Doe Corporation, placed the calls at issue, Tomorrow Energy's agent acted with actual or apparent authority and/or in accordance with a contract between Tomorrow Energy and its agent, John Doe Corporation. Tomorrow Energy's agent acted under Tomorrow Energy's control and for Tomorrow Energy's benefit and/or with Tomorrow Energy's knowledge and approval. Tomorrow Energy controlled its agent and knew about, and received the benefits of, the agent's calling activities. Tomorrow Energy ratified the agent's conduct with respect to the placing of such calls.

87.     Defendants have, therefore, violated 47 U.S.C. § 227(b)(1)(B). As a result of Defendants' conduct, Plaintiff and the other members of the Robocall No Consent Class are each entitled to, under 47 U.S.C. § 227(b)(3)(B), a minimum of $500.00 in damages for each violation of such act.

88.     In the event that the Court determines that Defendants' conduct was willfull and knowing, it may, under 47 U.S.C. § 227(b)(3)(C), treble the amount of statutory damages recoverable by Plaintiff and the other members of the Robocall No Consent Class.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Roberta Lindenbaum, individually and on behalf of the Class, prays for the following relief:

1.      An order certifying this case as a class action on behalf of the Class as defined above; appointing Lindenbaum as the representative of the Class and appointing her attorneys as Class Counsel;

2.      An award of actual and statutory damages to be paid into a common fund for the benefit of Plaintiff and the Class;

3.      An order declaring that Defendants' actions, as set out above, violate the TCPA;

4.      An order requiring Defendants to disgorge any ill-gotten funds acquired as a result of its unlawful telephone calling practices;

5.      An order requiring Defendants to identify any third-party involved in the prerecorded calling as set out above, as well as the terms of any contract or compensation arrangement it has with such third parties;

6.      An injunction requiring Defendants to cease all unsolicited prerecorded calling activities, and otherwise protecting the interests of the Class;

7.      An injunction prohibiting Defendants from contracting with any third-party for marketing purposes until it establishes and implements policies and procedures for ensuring the third-party's compliance with the TCPA;

8.      An award of reasonable attorneys' fees and costs to be paid out of the common fund prayed for above; and

9.      Such further and other relief as the Court deems necessary.

## JURY DEMAND

Plaintiff requests a trial by jury of all claims that can be so tried.

**ROBERTA LINDENBAUM**, individually and on behalf of a Class of similarly situated individuals

Dated: November 15, 2019              By:   /s/Adam T. Savett
                                             One of Plaintiff's Attorneys

Adam T. Savett (VA73387)
adam@savettlaw.com
Savett Law Offices LLC
2764 Carole Lane
Allentown PA 18104
Telephone: (610) 621-4550
Facsimile: (610) 978-2970

Attorneys for Plaintiff and the Putative Class